IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VERNON KING, JR., <br> (TDCJ-CID #590316) <br><br> Petitioner, <br><br> VS. <br><br> RICK THALER, <br><br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. H-12-1810 |

## MEMORANDUM AND OPINION

The petitioner, Vernon King, Jr., seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a disciplinary conviction at the Estelle Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). He is serving a life sentence for a state-court conviction for murder. Based on careful consideration of the pleadings, the record, and the applicable law, this court denies the federal petition and, by separate order, enters final judgment. The reasons are explained below.

I. **Background**

On February 21, 2012, prison officials at the Estelle Unit conducted a hearing in disciplinary case #20121 18805. The hearing officer found King guilty of attempting to assault an officer. King's punishment consisted of a reduction in good-time earning class status from Line 1 to Line 3 and a loss of 900 days good-time credit. On June 15, 2012, this court received King's federal petition. King contends that his conviction in disciplinary case #20121 18805 is void for the following reasons:

(1) the hearing officer violated his right to due process;

 (2) the procedures employed during the disciplinary hearing were inadequate;

 (3) he was not allowed to attend the hearing and could not present his defense; and

 (4) the evidence was insufficient to support the finding of guilt because the officer used excessive force, and King did not assault the officer.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-7).

## II. The Legal Standard

A district court may examine habeas petitions before an answer or other responsive pleading is filed. *Kiser v. Johnson,* 163 F.3d 326, 328 (5th Cir. 1999). Such a review is based on "the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." 28 U.S.C. § 2254, Rule 4, Advisory Committee Notes.

The standards governing disciplinary proceedings depended on the sanction imposed and the consequences. A prisoner punished by solitary confinement and loss of good-time credits is entitled to (1) written notice of the charges against him at least twenty-four hours before the hearing, (2) a written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken, and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. When the punishment has no effect on the sentence length, an inmate is entitled to some notice, an opportunity to present his view either in person or by written statement, and an informal nonadversarial review. *See Wolff v. McDonnell,* 418 U.S. 539, 563-66 (1974), *Hewitt v. Helms,* 459 U.S. 460 (1983); *Walker v. Navarro Cnty. Jail,* 4 F.3d 410, 412 (5th Cir. 1993). While a State may create liberty interests applicable to prisoners and protected by the Due Process Clause, such interests are generally limited

to regulations or statutes that affect the quantity, rather than the quality, of time served. A prisoner's loss of good-time credits as a result of punishment for a disciplinary conviction, increasing the sentence beyond the time that would otherwise have resulted from state laws providing mandatory sentence reductions for good behavior, must be accompanied by certain procedural safeguards in order to satisfy due process. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997).

### III. Analysis

King's punishment consisted of a reduction in good-time earning class status from Line 1 to Line 3 and a loss of 900 days good-time credit. To the extent that King attempts to assert a claim of a denial of due process based on the loss of privileges during the reduction in custodial classification, his claims are barred. These punishments are not atypical and did not pose significant hardship in relation to the ordinary incidents of prison life. *Sandin,* 515 U.S. at 484, 486 n.9. The loss of privileges changed the conditions of King's confinement but did not give rise to a due process claim. *Madison,* 104 F.3d at 767-68.

King may complain that the reduction in his good-time earning class status has delayed his release on parole, creating a due process violation. Prisoners may become eligible for release under Texas law on parole or under a mandatory supervised release program. *See Madison,* 104 F.3d at 768. "Parole" is the "discretionary and conditional release of an eligible prisoner . . . [who] may serve the remainder of his sentence under the supervision and control of the pardons and paroles division." *Id.* "Mandatory supervision" is the "release of an eligible prisoner . . . so that the prisoner may serve the remainder of his sentence not on parole, but under the supervision and control of the pardons and paroles division." *Id.* The law is clear that King has no constitutional right to parole. *Orellana v. Kyle,* 65 F.3d 29, 32 (5th Cir. 1995); *Creel v. Keene,* 928 F.2d 707 (5th Cir. 1991);

*Madison,* 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18, § 8(a)). The Fifth Circuit has repeatedly rejected efforts by Texas prisoners to assert a constitutionally protected interest arising out of state parole statutes. *See Madison,* 104 F.3d at 768; *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir. 1995); *Orellana v. Kyle,* 65 F.3d at 31-32; *Gilbertson v. Tex. Bd. of Pardons and Paroles,* 993 F.2d 74, 75 (5th Cir. 1993). Any argument by King that he is entitled to be considered for release on parole at a particular time would fail.

King may argue that if he had remained at the good-time earning status of Line 1, rather than Line 3, he would have had an opportunity to earn good-time credits that might have led to an earlier release on parole. The change in his good-time earning status does not mean that he has lost good-time credits. Rather, his ability to earn good-time credits was curtailed. King's diminished ability to earn good-time credits, without more, does not rise to a deprivation of a constitutionally protected liberty interest. *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied,* 517 U.S. 1196 (1996) ("the mere opportunity to earn good-time credits" does not constitute a "constitutionally cognizable liberty interest sufficient to trigger the protection of the due process clause"). The possibility that an inmate's good-time earning status will affect the timing of his release is considered a speculative, collateral consequence of the prison disciplinary decision that does not create a constitutionally protected liberty interest. *Id.*

King may complain of the delay in his release to mandatory supervision because he lost 900 days of good-time credits. King claims that he is eligible for release to mandatory supervision. (Docket Entry No. 1, Federal Petition, p. 5). King is serving a life sentence for murder. He is ineligible for mandatory supervision according to the mandatory supervision statute in effect when he committed the underlying offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.18, Sec.

4

8(c)(1)(West 1990). A prisoner may not be released to mandatory supervision if the prisoner is serving a sentence for a first degree felony under Section 19.02, Penal Code (murder). TEX. GOV'T. CODE ANN. § 508.149(A)(1) (West 2009). A life-sentenced inmate is not eligible for release to mandatory supervision. *Ex parte Franks,* 71 S.W.3d 327, 327-28 (Tex. Crim. App. 2001). "Under a literal reading of this law, it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life." *Id.* at 328. The *Franks* court declined to substitute some number of years for a life sentence to make it possible to calculate a mandatory supervision release date. The Fifth Circuit has followed the *Franks* holding in a habeas challenge by a Texas prisoner serving a life sentence. In *Arnold v. Cockrell,* 306, F.3d 277, 278 (5th Cir. 2002), the Fifth Circuit, citing to the Texas Court of Criminal Appeals's opinion in *Franks,* noted that "[i]t is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law," and "we defer to the state courts' interpretation" of its statute. *Arnold,* 306 F.3d at 279 (citing *Weeks v. Scott,* 55 F.3d 1059, 1063 (5th Cir. 1995)). In *Seaton v. Procunier,* 750 F.2d 366, 368 (5th Cir. 1985), the Fifth Circuit stated: "We will take the word of the highest court on criminal matters of Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law." The Fifth Circuit concluded that a Texas inmate serving a life sentence was not eligible for release under the Texas mandatory supervision statute and had no constitutionally protected interest in any loss of accrued good-time credits.

Under state law, King is not eligible for mandatory supervised release on his life sentence. King is not entitled to federal habeas corpus relief.

5

## IV. Conclusion

King's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot. A certificate of appealability will not issue. The showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). When a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484. This court declines to issue a certificate of appealability because King has not made the necessary showing for issuance.

SIGNED on July 9, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge